All right, well let's go ahead with counsel for Ms. Borowick. We'll be pleased to hear from you. Yes, good morning. May it please the court, my name is Victoria Chuggin and I represent the appellant Tami Borowick. I'd like to reserve two minutes for rebuttal, please. Disability cases such as this one involving rheumatological disorders, particularly autoimmune disorders, are admittedly very difficult to adjudicate. Individuals suffering from these symptoms and very few traditional objective findings. It can take months or years of testing and different treatments for a doctor and the claimant to figure out what's going on and Social Security judges can't rely on MRIs or conclusive blood tests. And so in such cases, our contention is that the testimony of the claimants themselves and the opinions of treating physicians and specialists are just paramount. Here we have the opinions of two such medical providers, the appellant's rheumatologist, Arunola Dada, and the opinion of her primary care provider, Dr. Sharma. Both had treated her for a significant period of time and were familiar with her medical history, which was very extensive. And both assessed limitations that support a finding of treated for about a year and a half to two years and a pine that Ms. Borowick could not perform sedentary work and that on most days she would need to convalesce and be recumbent. And Dr. Sharma, who's the primary care provider, had treated her for over six years for the same reason, based on Sjogren's and associated conditions, indicated that her condition had improved, but that she still had bad days where she needed to sleep most of the day. And that middle standing of about 10 minutes would bring on symptoms that would not allow her to stand and walk. Now, the judge took a look at this and he gave three reasons for rejecting their opinions. The first one was a lack of objective medical findings. Now he had acknowledged that she suffered from a series of medically determinable impairments, including Sjogren's. And so what he didn't do in this case was to show that the findings that he pointed out truly undermined the limitations assessed by both of these long term providers. For example, he cited a lack of joint swelling. Well, there's no evidence that individuals with Sjogren's have joint swelling. He cited the lack of distress. Well, distress is a hallmark of an acute condition, somebody who goes into an emergency room. This is a chronic condition. Ms. Borowick had been living for several years with chronic fatigue and pain. These are low level impairments, not acute impairments. But wasn't she also, I mean, Sjogren's was part of her case, but she had other findings, too, that these other findings might have been relevant to, no? Well, he didn't establish that and he didn't indicate which evidence he was relying on and which impairments he was rejecting based on which symptoms. So, for example, if you're referring to the joint swelling, there is evidence of spondyloarthritis, but it's not clear anywhere from the record that the joint swelling is observable at all appointments. Same with the normal gait. Her contention is that her gait is slowed because of pain and fatigue, but pain is highly subjective. She didn't have a broken leg or she didn't have, you know, a patellar impairment that would cause swelling of her knee. Most of her limitations came from pain and fatigue, and so there's nothing in these objective findings cited by the administrative law judge that really refutes what the two doctors, who are well aware of all of her diagnoses, saw. But are the findings at least supportive of the fact that she can perform some minimal level of work such that she's not disabled? I mean, the sad part of the case is that your client, you know, was a sophisticated, educated person, and through, you know, her autoimmune disease and other ailments, is not able to perform at the level that she was accustomed to performing. That, I think, is clear. But the question is whether she's able to perform at other levels that would nonetheless be greater than disabled, and are the ALJ's findings that we're talking about at least relevant to that point? I don't think they are, because the problem with Sjogren's disorder or syndrome is that there are good days and bad days. And so, even though there were some points, after much treatment and much effort on her part, where she was somewhat functional, she couldn't consistently attend work. And there is vocational expert testimony in this case that an individual who is unable to attend work full-time, who would miss one or more days of work per month, couldn't sustain any kind of employment. And that could be a cashier job, or it could be a sedentary job. And so, all the universe of work is eliminated because of these symptoms, which cause her to crash and be tired and be achy. So, these symptoms, even if they show that, you know, she might, there might be some days where she's able to work, and some days where she's not, she couldn't certainly consistently work. What about where the ALJ pointed out that she had said she exercised every day, which included, like, climbing, I guess, climbing stairs and hills. So, that would seem to go somewhat to the fact that she has good days and bad days if she's exercising every day. Sure. She said she tried to exercise every day, but that after three-quarters of a mile, she would have to pay by sleeping for a few days afterwards, which is characteristic of impairments like fibromyalgia and Sjogren's syndrome. So, if a person overdoes it, then they end up hurting and having excessive symptoms afterwards. And so, her doctors advised her to try to maintain some low level of activity. But walking three-quarters of a mile and lifting light weights is not transferable or comparable to working full-time at a light level job, which involves lifting 10 minutes, excuse me, which involves lifting 20 pounds and 10 pounds frequently and walking and standing six hours out of an eight-hour day. Now, the other reasons he cited were improvement with treatment and the fact that the opinions were based on subjective symptoms. The improvement with treatment, Ms. Borowick is very proud of that. She did improve with treatment, but not to the point of being able to sustain some kind of full-time work. And she's not opposed to going and doing some other kind of work. She's very restless at home and would like to be able to get out there and do something. And this isn't about her. I wanted to ask you a question about the doctors that ALJ did rely on. They didn't cite anything from her treating physicians, correct? The treating physician opinions had not been rendered at that point, so they had not reviewed them. Okay. They also, they hadn't reviewed anything from Exhibits 26 onward, and so that's 26 to 41 they hadn't seen because of the timing of their decisions. I see. Okay, thank you. Sure. My final point on the Administrative Law Judge's decision relates to his reliance on subjective symptoms. I think it's wrong to believe that two doctors, two professionals, would just cold-cloth believe their patient. Dr. Dada, in particular, said that she only supported a small number of patients in their pursuit of disability benefits, and that Ms. Borowick was one of those patients. She said, I believe her current medical conditions are well documented, long-standing in nature, and disabling to the consistent performance of even sedentary work on a full-time basis. What would you say are the objective symptoms? Of Sjogren's Syndrome, your Honor? Mm-hmm. So, Sjogren's is characterized mostly by subjective symptoms, and that's one of the problems. Oh, are there any objective symptoms? Well, there are, there is fatigue which can be, that can be measured on sleep testing and things of that nature. There are associated conditions also which have more objective findings, and those would include arthritis and neurocognitive disorders. She was diagnosed with a neurocognitive disorder at Exhibit 36F. She was also diagnosed with anxiety, and the Administrative Law Judge recognized those associated impairments. What about the eyes? Is that associated with Sjogren's or not? Yes. Traditionally, people do have impairments, dry eye, also salivary glands. That's not the principal impairment in this case, which is why it befuddled the doctors for so long, but they felt that she had enough of the other symptoms that her profile fit Sjogren's, and that's not disputed by the Administrative Law Judge in this case. Okay. All right, we've taken you over your time, but we'll have two minutes put up on the clock when you come back for questions. Thank you, Your Honor. Good morning, and may it please the court. My name is Christopher Brackett. I'm appearing on behalf of the Commissioner of Social Security, and I ask that the court affirm the District Court's judgment and uphold the ALJ's decision. Now, in this case, this really comes down to what the regulations require the ALJ to do. The Commissioner's regulations that were revised in 2017 place a primacy on objective medical evidence and the such factors as treating relationship or specialization are relegated to and a lesser of lesser importance than those two other factors, the supportability and consistency, and it would be carving out an exception to these regulations to try to find that a treating relationship can overcome the lack of objective support. Now, I know one thing that opposing counsel said is that the ALJ's findings don't refute the finding regarding the objective medical evidence. That does not refute the opinions of these doctors, but it's not a matter of refute. The regulations explain that it's about support. Is the opinion well supported by the objective medical findings? And here they are not. I don't think there's any dispute that the examination findings consistently pointed to normal findings and normal mental status findings. Despite these claims of fatigue, she was not demonstrating any sort of cognition issues beyond a mild cognitive impairment. She was alert and oriented at all times. Despite this claim of fatigue, she was not showing any limitations in strength. Consistently, time and again, these findings were normal. It's perfectly reasonable for an ALJ to conclude these objective findings do not support these opinions. Just pause you there, Mr. Bragg, just because Judge Rustani had a question. Yeah. Yes, I did have a question. There seems to be an understanding that she has a condition that is basically defined by subjective findings, if you want to call those subjective. I'm just wondering how you think these regulations should work with conditions that are mostly supported by subjective findings? Yes, Your Honor. Well, first of all, I would point out that while Sjogren's Syndrome, you know, maybe diagnosing it might depend upon a claimant's statements. There's no dispute that she has it here. But what we're talking about the opinion, an opinion is a statement about the claimant's limitations, and there was no support for the limitations themselves. It would be reasonable to expect that somebody describing disabling levels of fatigue would manifest those findings of fatigue during an examination. Okay, the examinations by the state doctors were all, what, telemedicine in this case? The state doctors don't do examinations. The state agency physicians review the record as a whole and draw conclusions from the examination findings that are in the record. So they examined the evidence as a whole, but the treating physician's opinions weren't yet in the record. Correct, Your Honor. But the ALJ found that there's that first of all, the ALJ found that the opinions themselves were not persuasive. The opinions from the dermatologists were not persuasive. Secondly, the ALJ also considers consistency with the record as a whole. I mean, state agency doctors, by just the nature of the administrative process, their opinions always come out midway through the entire period and issue just for the fact that they're there at the initial and reconsideration levels of the administrative process. So anything developed after that, obviously, they're not going to be citing that. That's why the ALJ considers whether it's consistent. If there's some major break, some change in what the evidence shows, the ALJ won't find them consistent. But here, she was, Ms. Borowick, consistently had normal findings from before and after when the state agency doctors rendered their opinions. What do you mean by normal? What do you mean by normal findings? Normal findings of what? Normal findings of, you know, intact. She was able to walk normally. She had alert and oriented mental status. She was maintaining her concentration sufficiently. She was, you know, nothing, nothing about her appearance demonstrated anything that would manifest during an examination as far as, you know, she's describing major limitations from fatigue, but she's, there's no indication of diminished strength testing. At what time? I mean, it seems that when she returned from Guatemala, this flare or perhaps, you know, showcasing itself. And it seems that when she first got back, things were not good. And then I read the ALJ decision to be saying over time they improved. Yes, yes, Your Honor. And as, as she got treatment for various symptoms, and there were a number of factors contributing to her fatigue. One was sleep apnea. She got treatment for sleep apnea about four months after her return from Guatemala, I believe, and that that improved her fatigue somewhat. And then the following January, she started treatment with hydroxychloroquine for autoimmune disorder. And that led that by her own representation that diminished her need for sleep. She was at one point sleeping 21 hours a day. Once she got the good treatment that helped her out, she was reporting that she was back down to eight to nine hours of sleep. But eight to nine hours of sleep a night and then naps, right? Isn't that what the record shows? There was one indication that she was napping, there was another indication that she was only sleeping at night. And that was, I think it's 1611 of the record. I think the question is, there's obviously something. The question is, can she work or not? And according to Miss Warwick's counsel, that she doesn't have enough periods without fatigue that she can maintain a job. I mean, the whole thing here is about malaise and fatigue and a slight reduction in cognitive function, right? So what supports that she can keep a job? Well, Your Honor, I would say that what supports it, first of all, are the medical opinions that the LGA found persuasive from doctors, Aldo and Baylor, the state agency physicians. These are experts in disability evaluation, they've rendered opinions that are supported by the record and consistent with the objective findings. On the other side, there's the opinions from Dr. Dada and Dr. Sharma, both of which are based on the claimant's subjective statements. The LGA expressly concluded that if you look at the opinions themselves, they are repeatedly saying she reports, she says, they're highlighting the symptoms that she said to them. The LGA found the claimant's subjective statements inconsistent with the demonstrated improvement she experienced once she found the right treatment. That's based on her testimony or other evidence in the record? The evidence in the record showed that she improved in her fatigue diminished, she was exercising daily, she was exercising for the daily walks, including hills and stairs. She was also her statements about how much sleep she needed were greatly reduced from her initial onset of Sjogren's. Your Honor, these are, this is a matter of whether these findings are reasonable. A reasonable person could look at this evidence and come out the same way as the ALJ. Now, you could argue, as opposing counsel did, that the facts support a different outcome. But under substantial evidence review, the touchstone is reasonableness. We are all about whether a reasonable person could find the adequate, could find adequate, the evidence in the record to support the ALJ's conclusions. And that's what we're dealing with here. Now, ultimately, we are looking at a conflict in medical opinions, the regulations placed as a primacy, the support and consistency, the treatment relationship cannot substitute for that. This is a matter to hold otherwise be carving out an exception to the regulations, targeting back to this court's case law prior to the change in regulations. And as this court recognized in Woods v. Kijikazi, the old case law placing treatment relationship above all other factors is inconsistent with how the regulations operate now. As a last, I see I have about a minute left, I just want to touch on remedy really quickly. The claimant is, I believe at one point, asking for payment of benefits, but there are conflicting medical opinions here. It would be it would be improper for a court to credit some of these opinions while overlooking the other opinions. This is if the court finds a harmful legal error, the appropriate remedy is to send it back to the agency for a fact finder to properly consider the opinions. But we maintain that the ALJ here applied the regulations and rendered findings that are supported by substantial evidence. I wanted to ask you a question about blood tests from the rheumatologist. I saw a blood test that showed inflammation, certain factors that show inflammation. Is that relevant to the Sjogren's diagnosis? Your Honor, I think it might be relative to the diagnosis of Sjogren's, but we had, we don't contest that she has Sjogren's. We, the ALJ found that she had established Sjogren's as a medically determinable impairment, and had shown it to be severe, which means that it caused more than a minimal limitation. And ultimately, it contributed to her being limited to light work, unskilled work. And as as to the degree of limitation, I don't know if it if it really bears on on how much persuasive effect to give any one opinion in this record. Okay. Okay, Mr. Brackett, that takes you over your time. We appreciate your argument. Let's hear rebuttal. Just go ahead and unmute yourself. Apologize. Opposing counsel indicates that the support for the administrative law judge's decision is the opinions of the consultative evaluators, the DDS doctors. In this circuit, DDS opinions or non-examining opinions do not constitute substantial evidence to reject an examining or treating physician opinion unless they're well informed. In this case, they had not reviewed half of the record, including the two opinions of the treating physicians. And so their opinions should not be sufficient. And a second point I'd like to make is that we really didn't get to the evaluation of the claimant's testimony. But that's really what's at the heart of this case. The administrative law judge didn't believe that Ms. Borowick's symptoms were as severe as she alleged. And in this case, that is essentially what he did. He rejected her testimony and then used his own feelings about her credibility to turn around and reject the evidence. Let me see if I understand where we are. They say they do not contest Sjogren's. So they don't contest the objective symptoms that show Sjogren's. What they object, what they contest is that her functioning is not as bad as she says. So everybody agrees she has Sjogren's. And they said that there's nothing to show that she can't hold down a job. She has, she exercises. Her fatigue is less. That's what they say. Now, her exercising is a matter of treatment. She's trying to walk in order to keep her joints limber. She's not exercising in a way that would transfer to light work. If she's limited to sedentary work, in this case, according to the regulations, there should be an automatic finding of disability based on the administrative law judge's own findings. A little bit of exercise does not translate into six to walking during the day. And finally, as for the objective medical evidence, it is being used to reject her functioning, her testimony about her functioning. Or that's what the administrative law judge did. And that is what we are contending was an error is to use findings to reject what reasonably could be a symptom and limitation caused by an impairment that's uncontested. Okay. Thank you. I think we have your argument. I want to thank both counsel for the helpful briefing and argument this morning. And this matter is submitted. Thanks.
judges: BRESS, VANDYKE, Restani